# EXHIBIT C



London | New York | São Paulo | Singapore

# CONFIDENTIALITY & NONDISCLOSURE AGREEMENT

This Confidentiality & Nondisclosure Agreement ("Agreement") is effective as of this __1__ day of __February__, 201_6_ ("Effective Date") and is made by and between Converged Compliance Solutions, Inc., a New York corporation with a principal address at 3636 Waldo Ave. #2A, Bronx, NY 10463 (hereinafter referred to as the "Company") and the following party (hereinafter referred to as "Exchanging Party"):

[Party Name]: __XOP Networks, Inc.__

[Jurisdiction and Business Type]: __Texas corporation__,

and having a principal business address at:

[Street Address 1]: __17290 Preston Road__

[Street Address 2]: __Suite 300__

[City]: __Dallas__            [State]: __Texas__

[Country]: __United States__        [Postal Code:] __75252__

[Email]: __sgupta@xopnetworks.com__    [Phone]: __+1 972 590 0201__

W I T N E S S E T H:

**WHEREAS**, the Company and the Exchanging Party desire to exchange certain confidential and proprietary information in order to explore potential business opportunities with respect to the Company's products and services, financing or investment arrangements, and/or other potential strategic relationships between Company and the Exchanging Party; and

**WHEREAS**, the Company may provide to the Exchanging Party certain confidential and proprietary information including proprietary and confidential technical information and intellectual property, business plans, financial models, strategic relationships, business prospects, customer lists, third party agreements and other information which is deemed to be of a confidential and proprietary nature, provided the Exchanging Party agrees to keep confidential and not to disclose such information as provided in this Agreement; and

*TM*



**WHEREAS**, the Exchanging Party may provide to the Company certain confidential and proprietary information of its own, including proprietary and confidential intellectual property, business plans, financial models, strategic relationships, business prospects, customer lists, third party agreements and other information which is deemed to be of a confidential and proprietary nature, provided the Company agrees to keep confidential and not to disclose such information as provided in this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing premises, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each party covenants and agrees as follows:

1. The subject matter and content of any discussions or communications between the Company (or any of its officers, directors, shareholders, employees or agents ("Representatives")) and the Exchanging Party or any of its Representatives, whether in writing or otherwise, and irrespective of the method or medium of transmission ("Communications"), which relate to, concern or contain information with respect to the Company's or Exchanging Party's business plans, business relationships, customer list(s), prospective or potential business prospects, negotiations, discussions or agreements with third parties, finances or financial performance, proprietary technologies and/or intellectual property, whether owned or licensed, including patents, patent applications, computer software programs, source and/or object code, know how, inventions, systems, and methods (the "Subject Matter") shall not be disclosed by the receiving party (the "Recipient" or "Receiving Party") to any third party or person for any reason whatsoever, without the prior written consent of the other, which consent may be withheld in such party's sole and absolute discretion.

2. Each party agrees to take all necessary and appropriate actions to keep all Communications and any and all information regarding the Subject Matter, in whatever form or medium contained or represented, confidential and secret (hereinafter "Confidential Information"). Each party agrees that it shall not copy, reproduce, use, publish or disseminate the Confidential Information of the other party ("Disclosing Party") for any purpose other than for the purpose set forth in Paragraph 3 below, without the prior written consent of the Disclosing Party, which consent may be withheld by the Disclosing Party in its sole and absolute discretion. For purposes of this Agreement, any technical or business information of a third party furnished or disclosed by one party to the other shall be deemed Confidential Information of the Disclosing Party and subject to the terms of this Agreement.

3. Confidential Information furnished by the Disclosing Party to the Receiving Party shall be used by the Receiving Party solely for the purpose of set forth on Exhibit A which is attached hereto and made a part hereof. The Receiving Party agrees that no person, other than the undersigned officer of the Receiving Party, and its employees and professional advisors who have a need to know, shall possess or have access to Confidential Information.

4. The Disclosing Party shall retain all right, title and interest to its Confidential Information when transmitted or disclosed hereunder. No license under any trademark, patent or copyright, or application therefor, or as to any other property owned or licensed to the Disclosing Party is either granted or implied by the disclosure of Confidential Information. Without limiting the foregoing, Receiving Party agrees not to use, directly or indirectly, any of the Confidential Information to contest, oppose, cancel, interfere with or block any application for, or the issuance or grant of, any trademark or service mark, patent, invention or any



other intellectual property (or any derivative rights or works thereof) of the Disclosing Party before or through the United States Patent & Trademark Office or with the Patent Office or Agency of any other jurisdiction ("PTO"), and grants the Disclosing Party a power of attorney to investigate whether Receiving Party has taken any such actions before any PTO.

5. The Receiving Party shall not alter, modify, breakdown, disassemble or reverse engineer any portion of the Confidential Information without the prior written consent of the Disclosing Party.

6. All tangible Confidential Information supplied by the Disclosing Party or otherwise furnished to the Receiving Party, and all copies thereof, shall be returned to the Disclosing Party or destroyed by the Receiving Party within ten (10) days of written demand therefor. The requirements of confidentiality set forth herein shall survive the return of such Confidential Information. Notwithstanding the termination of certain obligations as herein provided under this Agreement, such termination shall not by implication, waiver or otherwise, impair, dilute or convey title ownership or any other beneficial rights or interests of the Disclosing Party in or to any of its Confidential Information or any other information owned by it, nor shall the Receiving Party be relieved of any other obligations, whether based in common law, in statute or otherwise, relating to or arising out of the Receiving Party's improper use, possession or conversion of the Disclosing Party's intellectual property, trade secrets or other property interests.

7. This Agreement shall govern the delivery of all Confidential Information until terminated by written notice from either party sent to the other, except that the obligations hereunder with respect to Confidential Information disclosed prior to termination shall continue for a period of five (5) years from the date of such termination, unless otherwise agreed to in writing by the Disclosing Party.

8. Neither this Agreement nor any rights hereunder are assignable or otherwise transferable by either party, in whole or in part, provided that either party may assign or transfer this Agreement and rights hereunder to any current or future affiliates or successor party, provided the assigning party shall continue to be bound by its obligations with respect to Confidential Information and only if such assignee agrees in writing to the terms and conditions herein. Each party agrees that its shall cause its Representatives to be bound by this Agreement, and further agrees that it shall be jointly and severally liable for any and all damages and injuries caused by any such persons, whether or not the party has any direct causation or contributing responsibility for the same.

9. This Agreement shall be binding upon each party and its respective successors and assigns, and shall inure to the benefit of the other party, and its successors and assigns. Each party acknowledges and agrees that the covenants and obligations contained herein shall be deemed to include any and all subsidiaries, direct and indirect affiliates, and any entities or persons which directly or indirectly control, are under the control of, or are controlled by, it.

10. Notwithstanding anything to the contrary contained herein, the foregoing obligations with respect to the nondisclosure of Confidential Information shall not apply to a party if it can show:

    a. such information is available to the public through no breach of this Agreement;

Version: 2-2016



    b.  such information was received from a third party without any obligation or duty to hold the same in confidence;

    c.  such information is required by law or regulation to be disclosed, including, but not limited to, securities laws, rules and regulations, but only to the extent necessary to comply with the same; provided, the Receiving Party seeking to disclose the same first notifies the Disclosing Party of the order and permits such the Disclosing Party reasonable opportunity to object to any such disclosure or seek appropriate protective relief; or

    d.  such information is disclosed in response to a valid order or decree of a court or other governmental body, but only to the extent of necessary to comply with the same; provided the Receiving Party seeking to disclose the same, to the extent lawfully permitted, first notifies the Disclosing Party of the order and permits such the Disclosing Party reasonable opportunity to object to such disclosure or seek appropriate protective relief.

11. With respect to any dispute, claim, or legal action between the parties regarding or relating to this Agreement, the prevailing party shall be entitled to recover all reasonable out of pocket costs and expenses (including, but not limited to, reasonable attorneys' fees) incurred as a result thereof.

12. This Agreement shall not be modified or amended, except by the written consent of both parties. No waiver of any provision of this Agreement, or any consent made pursuant to this Agreement shall be effective, unless the same is made in writing.

13. The foregoing terms of this Agreement shall apply as of the Effective Date and to any prior and subsequent meetings or any communications between the parties relating to the same subject matter unless this Agreement is modified in writing and such writing is signed by both parties.

14. In interpreting the terms of this Agreement, the substantive laws of the State of New York shall be applicable, and in any dispute the parties submit to the exclusive jurisdiction of any federal or state court located in New York without regard to convenience of forum ("Designated Courts"). In the event Exchanging Party is a citizen or entity formed or organized under the laws of a country other than the United States of America, or it conducts business or has properties or assets outside of the United States of America, Exchanging Party agrees that any final judgments or non-appealable orders issued by a Designated Court shall, to the maximum extent permitted under the laws of such foreign jurisdiction, be enforceable against Exchanging Party according to the terms of the judgment or order upon an application for enforcement made therefor. Exchanging Party waives, to the maximum extent permitted, any rights to a contested hearing, de-novo review, appeal, proceeding to show cause, or any other further adjudicatory proceeding before any court, tribunal or other adjudicative body within such jurisdiction. **EXCHANGING PARTY ACKNOWLEDGES AND AGREES THAT SERVICE OF PROCESS MADE IN ACCORDANCE WITH THE LAWS OF STATE OF NEW YORK ARE SUFFICIENT NOTICE UNDER THE LAWS OF ALL FOREIGN JURISDICTIONS TO WHICH EXCHANGING PARTY MAY AVAIL ITSELF AND EXCHANGING PARTY SPECIFICALLY WAIVES ALL RIGHTS TO ANY MEANS OR METHOD OF NOTICE OR PROCESS REQUIRED UNDER ANY SUCH FOREIGN JURISDICTION. EXCHANGING PARTY ACKNOWLEDGES, AGREES AND CONFIRMS WITHOUT RESERVATION OF ANY KIND THAT IT**



**IRREVOCABLY SUBMITS TO THE PERSONAL AND SUBJECT MATTER JURISDICTION OF THE DESIGNATED COURTS AND IRREVOCABLY WAIVES ANY JURISDICTIONAL PRIVILEGES RESERVED TO CITIZENS OF THE JURISDICTION TO WHICH IT BELONGS.**  It is further agreed that any Confirmed Award (as described below) shall be governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  Either party may submit a final judgment issued by a Designated Court to an arbitration body for confirmation of its validity and request that such arbitration body issue a conforming award on such judgment ("Confirmed Award").

15. Because the nature and extent of the damages that may result from a breach of this Agreement are difficult to ascertain, and the continuation of any breach may result in irreversible and irreparable damage, the parties agree that in addition to, and not in substitution of, all other remedies available at law and in equity, including monetary damages, an aggrieved party shall be entitled, upon application and a showing of good cause therefore, to seek equitable relief in the form of an injunction against the offending party, and such relief may be awarded without the requirement for a bond or other surety in the case of temporary relief which may granted upon the commencement or during the pendency of any proceeding.

16. In the event that any provision of this Agreement shall be adjudged by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions of this Agreement shall continue to be in full force and effect, and the provisions adjudged invalid or unenforceable shall be reinterpreted in such a manner as to yield the effect intended by the parties to the greatest extent permitted by law.

17. The Receiving Party agrees that no Confidential Information, or technical data furnished to it by the Disclosing Party shall be exported or re-exported by Receiving Party  to any destination outside of the United States without first complying with all requirements of the United States International Traffic in Arms Regulations ("ITAR"), the Unites States Export Administration Regulations ("EAR"), and the United States Office of Foreign Assets Control ("OFAC") including, but not limited to the requirements for obtaining any export license, if applicable. The Receiving Party shall not export or re-export, either directly or indirectly to any sanctioned destinations, denied persons or for use in weapons proliferation, in violation of United States federal regulations. The Receiving Party shall first obtain the written consent of the Disclosing Party prior to submitting any request for authority to export any such technical data.  In connection with foregoing, a Recipient Party agrees that it shall not disclose any technical information of the Disclosing Party to any person that is non-United States citizen (whether employee, consultant or otherwise) without first obtaining the prior written consent of the Disclosing Party, except for those foreign nationals that are permanent, full time employees of the Receiving Party that are citizens of the country where such Receiving Party is domiciled as first indicated above and that are not otherwise prohibited under applicable US laws, rules, regulations and orders as in effect.

Version: 2-2016



**IN WITNESS WHEREOF**, the undersigned have executed this Agreement on the day first above written.

|  |  |
|---|---|
| **Converged Compliance Solutions, Inc.** | Company Name: XOP Networks, Inc. |
| By: _____<br>Signature | By: _____<br>Signature |
| Name: Terence McDonough<br>Printed | Name: Sudhir Gupta<br>Printed |
| Its: Chief Executive Officer<br>Title | Its: Chief Executive Officer<br>Title |



# EXHIBIT A

**Purpose of Exchange of Confidential Information**

The parties may exchange information for the purpose of identifying and evaluating business opportunities of mutual interest and potential business cooperation transactions, including <u>business and technology discussion involving potential opportunities in the financial services market</u> _____.  Activities may include the evaluation of each party's technologies to determine suitability and complimentarily functions and capabilities among products and technologies.

Parties' Initials:

_____

_____ *(TM)*