# KLINGMAN LAW, LLC

280 Trumbull Street  21st Floor
Hartford, CT  06103-3514
Office: (860) 256-6120
Cell: (860) 965-5772
pak@klingmanlaw.com

September 20, 2021

**Via ECF**

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   Converged Compliance Solutions, Inc. v. XOP Networks, Inc., David Harding *et al.*
       No. 1:21-cv-05482-PGG (S.D.N.Y.)

Dear Judge Gardephe,

      On behalf of our Client, David Harding, a defendant in the above-captioned action, this is to respectfully request a pre-motion conference concerning our anticipated motion to dismiss all counts of Plaintiff's July 13, 2021 First Amended Verified Complaint (the "Complaint"). Through its counsel, Plaintiff advises that it does not consent to the motion.

      Only one of the nineteen Counts of the Complaint, alleging breach of fiduciary duty, is directed solely against Harding, but he is named together with defendants XOP Networks, Inc. and Sudhir Gupta (together "XOP") in ten other Counts.  In addition to the fiduciary duty claim, this letter addresses Plaintiff's claims for misappropriation of trade secrets (Counts X-XI), violations of the Racketeering Influenced Corrupt Organizations Act ("RICO") (XIV-XVI), fraudulent misrepresentation (IX), tortious interference with prospective contractual relations (XII), and conspiracy (XIII).  To avoid the unnecessary repetition of arguments, Harding also joins in and incorporates by reference XOP's pre-motion letter, filed contemporaneously, which addresses Plaintiff's claims for a permanent injunction (Count V), attorneys' fees (XVIII), and punitive damages (XIX) – all of which are also asserted against Harding.

      XOP's letter provides an overview of the Complaint's allegations.  As discussed therein, the claims arise from events that occurred in 2016, while Plaintiff and XOP were negotiating an arrangement under which XOP allegedly would engineer and build a telecom product for Plaintiff based on XOP's pre-existing telecom platform.  It is alleged that after those talks fell through, XOP used "Confidential Information" disclosed during the discussions in violation of two non-disclosure agreements.  Since Harding facilitated the introduction with XOP, Complaint, ¶37, Plaintiff surmises that he must have been involved in this purported use of Plaintiff's information.  *Id.*, ¶51.  Missing from the over 400 paragraphs of allegations are any

September 20, 2021
Page 2

details about the "Confidential Information" allegedly shared and used by XOP with Harding's assistance, or how the purported "fraud" was accomplished, such as what was said to who when.

Principles of pleading require more. Federal Rule of Civil Procedure 8(a) requires that a complaint "contain sufficient factual matter, ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Under this standard, there is a "plausible" entitlement to relief only where the allegations move a plaintiff's claims from "conclusory" to "factual," and from "factually neutral" to "factually suggestive." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007). For claims based on fraud, Rule 9(b) requires even more. *See, e.g., Crystal v. Foy*, 562 F.Supp. 422, 425 (S.D.N.Y. 1983) ("[T]o satisfy [Rule 9(b)], plaintiff's complaint must allege (1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn"). Furthermore, there must be differentiation among the defendants. *See DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Similarly, in the absence of supporting facts, allegations based on "information and belief" cannot satisfy Rule 9(b). *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972); *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir.1986). These primary deficiencies, together with the other flaws discussed below, support the contention that the Complaint fails to state a claim and should be dismissed with prejudice.

**1.      Breach of Fiduciary Duty Claim Against Harding (Count XVII)**

It is alleged that Harding was a shareholder, director and employee of Plaintiff from April, 2015 to March, 2017. Complaint, ¶¶16, 97. His independent work on behalf of his own sales company allegedly created conflicts of interest, *id.*, ¶98, for which he was demoted in January, 2017. *Id.*, ¶101. He also allegedly made unauthorized charges in an unspecified amount. *Id.*, ¶102. With no factual support, Harding is also accused of colluding with XOP to convert Plaintiff's "Confidential Information." *Id.*, ¶407.

The applicable statute of limitations for breach of fiduciary duty "depends on the substantive remedy that the plaintiff seeks," *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) (citation omitted), so where a "purely monetary" remedy is sought, courts apply the three-year limitations period for "injury to property." *Id.* (citation omitted). Since a monetary recovery is sought, Complaint, ¶¶3(iv), 410, the three year statute of limitations applies. The January, 2017 demotion was allegedly based on known conflicts of interest; presumably, the alleged unauthorized charges would have become apparent soon after Harding's March, 2017 departure, and the alleged collusion, although unsupported, would have occurred before then. This action was not commenced until June 23, 2021. Consequently, these claims are time-barred.

2.  **Common-Law Misappropriation of Trade Secrets Against All Defendants (Count X) and Violation of the Defend Trade Secrets Act ("DTSA") (Count XI)**

Under New York law and the DTSA, misappropriation claims must be pled with specificity so the accused "can defend himself ... and [] divine the line between secret and non-secret information." *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292 (DLC), 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008); *see, e.g.*, *Lawrence v. NYC Medical Practice, P.C.*, No. 18-cv-8649-GHW, 2019 WL 4194576, at *4 (S.D.N.Y. Sept. 3, 2019) ("[D]istrict courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated") (citations and internal quotations omitted).  Here, Plaintiff's broad claim that its "trade secrets" – defined as "without limitation, its non-public formulas, methods, business strategies, techniques, processes, contacts, and all such similar information ...," Complaint, ¶232 – were misappropriated is too vague and imprecise to provide adequate notice to Defendants or state a plausible claim.

These claims are also untimely.  Under New York law, a trade-secret misappropriation claim "accrue[s] at the time of defendants' alleged misconduct or upon the disclosure of the trade secret, not when plaintiffs discover the misappropriation." *Zirvi v. Flatley*, 838 Fed.Appx. 582, 586 (2d Cir. 2020).  A DTSA claim accrues when the plaintiff "'knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used.'" *Zirvi v. Flatley*, 433 F.Supp.3d 448, 459 (S.D.N.Y.), *aff'd on other grounds*, 838 Fed.Appx. 582 (2d Cir. 2020).  Here, any misappropriation of Plaintiff's purported trade secrets must have occurred in 2016.  Complaint, ¶70.  Plaintiff further alleges that it first became aware of XOP's alleged use on June 12, 2018, when XOP issued a press release. *Id.*, ¶¶73-74.  Since this action was not commenced until June 23, 2021, it is untimely as to these claims.  In addition, the DTSA only became effective on May 11, 2016, and does not apply retroactively. *Zirvi*, 433 F.Supp.3d at 463.  Here, the last date on which Plaintiff supposedly shared its trade secrets with XOP was May 9, 2016.  Complaint, ¶59.  Since this predated enactment, the DTSA does not apply.

3.  **Civil RICO Against All Defendants (Counts XIV-XVI)**

To state a RICO claim, a plaintiff must allege a "pattern of racketeering activity," which requires at least two predicate acts listed under 18 U.S.C. § 1961.  Plaintiff attempts to satisfy this burden by pleading that Defendants committed wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1957), and violations of the DTSA (18 U.S.C. §§ 1832(a)(1), (5)). Complaint, ¶¶333-388.  For the reasons stated, including that the alleged misappropriation occurred before the DTSA became effective and Plaintiff's "trade secrets" are not adequately defined, the DTSA provides no basis for RICO liability here.

To survive dismissal, facts must be alleged showing that the two remaining predicate acts – wire fraud and money laundering – are "related, and either amount to or pose a threat of continuing criminal activity." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183

September 20, 2021
Page 4

(2d Cir. 2008) (citations and internal quotations omitted).  Such "continuity" can be satisfied "either by showing a 'closed-ended' pattern – a series of related predicate acts extending over a substantial period of time – or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed."  *Spool*, 520 F.3d at 183 (citations omitted).

Here, neither type of pattern is alleged.  No closed-ended pattern is pled because the alleged predicate acts spanned only eight months, Complaint, ¶¶37, 70 (January, 2016 to August, 2016), and the Second Circuit has "never held" any period of time less than two years to establish closed-ended continuity.  *See Spool*, 520 F.3d at 184; *see also H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989) ("Predicate acts extending over a few weeks or months ... do not satisfy this requirement [of closed-end continuity]").  Likewise, no open-ended pattern is alleged because the Complaint does not plausibly plead a threat of continuing criminal conduct.  "[W]here the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999) (citations omitted).  The Complaint does not satisfy this standard.  Moreover, "once an allegedly fraudulent transaction is complete, a plaintiff may not rely on the defendants' retention or use of his assets to establish open-ended continuity."  *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F.Supp.2d 486, 511 (S.D.N.Y. 2007) (citation and internal quotations omitted), *aff'd* 328 Fed.Appx. 695 (2d Cir. 2009).  At best, Plaintiff has alleged a single scheme against a single victim, which is not the type of activity RICO was designed to addressed.  *See Sehgal v. Aggarwal*, No. 20-CV-4577(JS)(ARL), 2021 WL 3617479, at *4 (E.D.N.Y. Aug. 16, 2021) ("Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity") (citation and internal quotation omitted).

Finally, wire fraud must be pleaded with particularity under Rule 9(b).  *D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 Fed.Appx. 663, 666 (2d Cir. 2014).  As noted, Plaintiff does not plead the requisite who-what-when specifics.  Money laundering, meanwhile, requires a monetary transaction with a financial institution involving "criminally derived" funds.  *See* 18 U.S.C. § 1957.  The "money" on which Plaintiff's claim is based was paid by third-party entities who are not alleged to have committed any wrong.  Thus, these allegations are deficient.

4.      **Fraudulent Misrepresentation (Count IX)**

Plaintiff alleges that it was tricked into revealing its "Confidential Information" under the guise that it was negotiating a manufacturing agreement.  Complaint, ¶194.  Among other things, there are no specifics about these representations, nor when they were made and why

September 20, 2021
Page 5

they were false.  Thus, this claim does not satisfy the particularity requirements of Rule 9(b).  *See*, *e.g.*, *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999).

**5.       Tortious Interference with Prospective Contractual Relations (Count XII)**

Plaintiff's claim for tortious interference with prospective contractual relations is equally deficient.  To state a claim, a plaintiff must plead facts plausibly demonstrating that it "had a reasonable probability of entering into a business relationship with a third party."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018).  There are no plausible allegations that Plaintiff had a reasonable probability of entering into a contract with any particular financial trading company.  Plaintiff did not even have a product to sell in 2016, and had no means to engineer one (that was what it wanted XOP to do).  The claim also fails because the Complaint alleges that XOP's wrongful conduct was directed at Plaintiff rather than at the third party, as is required to state a cognizable claim.  *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004) ("[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship") (citations omitted).  The alleged wrongful conduct, if any, was not directed at any of XOP's business partners.  Consequently, this element of the tort has not been met.

**6.       Conspiracy (Count XIII)**

Plaintiff's claim that XOP and Harding conspired together to commit fraudulent misrepresentation, conversion, and misappropriation of trade secrets also fails because, as discussed herein and in XOP's pre-motion letter, those underlying torts are not pled.  *See Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 259 (S.D.N.Y. 2009); *see also Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 232 (S.D.N.Y. 2008) ("Under New York law, where the acts underlying a claim of conspiracy are same as those underlying other claims alleged in complaint, conspiracy claim is dismissed as duplicative.").

**7.       Plaintiff's Remaining Claims Fail**

Finally, the remaining claims against Harding, for: permanent injunction (Count V), attorneys' fees (XVIII), and punitive damages (XIX), fail for the reasons set forth in XOP's letter.  They are remedies rather than causes of action, and Plaintiff has not plead that the threat of irreparable injury, balance of the equities, and the public interest warrant injunctive relief against Defendants.

                                                    Respectfully submitted,

                                                    s/ Patrick A. Klingman
                                                    Patrick A. Klingman (PK-3658)

cc:       All Counsel of Record (via ECF)